**Milton E. MERMELSTEIN, Plaintiff,**

v.

**SECURITIES AND EXCHANGE COMMISSION, Defendant.**

**Civ. A. No. 85–3164.**

United States District Court, District of Columbia.

March 7, 1986.

Daniel J. Piliero, Tighe, Curhan & Piliero, Washington, D.C., for plaintiff.

Richard M. Humes, Office of Gen. Counsel, S.E.C., Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

This FOIA case is before the Court on the parties' cross-motions for summary judgment, and plaintiff's motion in the alternative for *in camera* inspection of the single disputed document to ascertain if it contains segregable (i.e., producible) parts. Plaintiff, a member of the Boston Stock Exchange ("BSE") and a partner of a BSE firm involved in a BSE disciplinary proceeding, seeks a report from the defendant Securities and Exchange Commission ("SEC" or "Commission") to the BSE of the SEC's inspection of the BSE which, plaintiff believes, makes mention of certain evidence given by a BSE staff analyst in the course of the disciplinary proceeding. The Commission maintains that the report falls within Exemption 8 to FOIA because it contains "matters ... related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions...." 5 U.S.C. § 552(b)(8). The material facts are not in dispute, and, for the reasons set forth below, the Court will grant the Commission's motion for summary judgment and deny plaintiff's motions.

It appears that in July, 1983, the SEC's Division of Market Regulation conducted a broad, general examination of the BSE, its clearing agency, and its member firms. Shortly thereafter it sent the BSE a report of its findings in which it reviewed the BSE's financial condition, market operations, trading surveillance techniques, and disciplinary procedures. The report also apparently referred to specific on-going BSE investigations of its members, including the inquiry into plaintiff's firm, Mermelstein & Co. On April 11, 1985, plaintiff requested a copy of the entire report. After the Commission refused to disclose the report, plaintiff tried again, this time asking only for those portions of the report which directly concerned the disciplinary proceeding against his firm. The Commission affirmed its earlier refusal to disclose, and on October 3, 1985, plaintiff filed this action.

It is undisputed that the SEC is an agency responsible for the supervision of the BSE and the withheld document an examination report on the BSE. The only question before the Court is, therefore, one of law, namely, whether or not the BSE is a "financial institution" within the meaning of Exemption 8 to FOIA. In arguing that the BSE is not such an institution, plaintiff relies chiefly on *M.A. Schapiro & Co. v. SEC*, 339 F.Supp. 467 (D.D.C.1972), another FOIA case, in which the court stated in *dicta* as follows: "[a] 'financial institution' ... means a 'bank, trust company, investment banker, or banking association or firm....' This definition does not include national securities exchanges or broker-dealers." 339 F.Supp. at 470. (Citation omitted). The *Schapiro* court's source for the definition of a "financial institution"— none being supplied by FOIA then or now—was an SEC rule, 17 C.F.R. 250.-70(c)(5), promulgated in 1941 pursuant to the Public Utility Holding Company Act of 1935,[1] 15 U.S.C. §§ 79–79z–6, for an altogether different purpose. *See* 6 Fed.Reg. 2026 (April 19, 1941).

The SEC contends that, while Congress did not define "financial institution" in FOIA, it subsequently included securities exchanges among those entities to be considered "financial institutions" for public access purposes when it enacted the Government in the Sunshine Act ("Sun-

1. 49 Stat. 803.

shine Act'') in 1976,[2] four years after *Schapiro* was decided, and, because FOIA and the Sunshine Act are *in pari materia, see Jordan v. Department of Justice,* 591 F.2d 753, 770 (D.C.Cir.1978), "they should be read together...." *United States v. Garcia,* 676 F.2d 1086, 1091 (5th Cir.1982).

The Sunshine Act uses the term "financial institution" twice, again, unfortunately, without definition. First it adopts the FOIA Exemption 8 *verbatim* as its own Exemption 8. 5 U.S.C. § 552b(c)(8). Next it mentions "financial institutions" as among those entities disclosure of information concerning which may be refused under Exemption 9(A). 5 U.S.C. § 552b(c)(9)(A). But the Senate Report accompanying the Sunshine Act states that the term as used in Exemption 9(A) was "intended to include ... exchanges dealing in securities or commodities, such as the New York Stock Exchange...." S.Rep. No. 354, 94th Cong., 1st Sess. 24 (1975). And a year following enactment of the Sunshine Act a congressionally-sanctioned publication asserted that FOIA Exemption 8 protects from disclosure "reports of the Federal Reserve Board concerning Federal banks, documents prepared by the [SEC] regarding the New York Stock Exchange, and other similar information." House Committee on Government Operations, *A Citizens Guide on How to Use the Freedom of Information Act and the Privacy Act in Requesting Government Documents,* H.R.Rep. No. 793, 95th Cong., 1st Sess. 13 (1977). Thus, according to the SEC, the term "financial institution" as Congress has used it in both statutes means the same thing, wherever used, because both are part of Congress' effort to regulate the public's access to the governmental decision-making process, and that it is clear now, if not earlier, that it includes securities exchanges such as the BSE.

Plaintiff suggests that Congress must have been aware of the *Schapiro* case when it enacted the Sunshine Act and could

have nullified it—but did not—had it thought the *Schapiro* court was wrong. Congress did expressly declare its intention to overrule another decision (although involving a different exemption) with which it disagreed, citing the legislative history, H.R.Rep. No. 1441, 94th Cong., 2d Sess. 25 (1976), *reprinted in* 1976 *U.S.Code Cong. & Ad.News,* 2183, 2261, from which, he argues, the Court should infer that Congress was not oblivious to judicial interpretations of its handiwork in FOIA and must have approved of those it did not denounce. The case the Sunshine Act undertook to overrule, however, was a decision of the U.S. Supreme Court,[3] and while it may be reasonable to assume that Congress is cognizant of Supreme Court decisions which it believes have misconstrued or misapplied its statutes, it is presumptuous in the extreme to think that it is aware of, and consciously adverts to, isolated decisions of a single federal district court when it passes comprehensive legislation some years later. Indeed, appellate courts have frequently cautioned against indulging in inferences of congressional approval (or disapproval) of judicial decisions—particularly lower court decisions—solely from Congress' failure to mention them by name when it enacts a new law. *See e.g., Jones v. Liberty Glass Co.,* 332 U.S. 524, 534, 68 S.Ct. 229, 234, 92 L.Ed. 142 (1947); *Central & Southern Motor Freight Tariff Ass'n. v. United States,* 757 F.2d 301, 317 (D.C.Cir. 1985); *Kay v. FCC,* 443 F.2d 638, 646 (D.C. Cir.1970).

■ The Court concludes that Congress has never acceded to the *Schapiro* court's restrictive census of "financial institutions" for purposes of FOIA's Exemption 8, but, to the contrary, has since given sufficient indication that it expects securities exchanges to be numbered among them when it comes to ordering public disclosure of matters relating to their regulation. The BSE is therefore to be regarded as a "fi-

---

2. Pub.L. No. 94–409, 90 Stat. 1241.

3. *Administrator, Federal Aviation Administration v. Robertson,* 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975).

nancial institution" for purposes of both FOIA and the Sunshine Act.

Plaintiff submits alternatively that the SEC should at least be required to disclose "[a]ny reasonably segregable portion of [the document] ... after deletion of the portions which are exempt under this section," 5 U.S.C. § 552(b), and he asks that the Court make an *in camera* inspection of the report to identify that which may be subject to production. The Commission responds that the portion of the report in which plaintiff is interested, namely, references to the BSE's disciplinary proceedings against plaintiff's firm, is not "segregable;" in other words, it is an integral part of the Commission's evaluation of the sufficiency of BSE's own self-policing efforts, and is not addressed to the merits of any individual case. To the extent it may be of value to the Commission in its supervision of the BSE, even information concerning specific disciplinary proceedings involving exchange members appears to fit squarely within the spirit and purpose of Exemption 8, and no reason having been shown to doubt the SEC's description of it as such, there is consequently no reason for the Court to review it *in camera.*

For the foregoing reasons, therefore, it is, this 7th day of March, 1986,

ORDERED, that plaintiff's motions for summary judgment and *in camera* inspection are denied; and it is

FURTHER ORDERED, that defendant's motion for summary judgment is granted, and the complaint is dismissed with prejudice.